# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-70003

United States Court of Appeals
Fifth Circuit

**FILED**

June 18, 2019

Lyle W. Cayce
Clerk

QUINTIN PHILLIPPE JONES,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas

ON PETITION FOR REHEARING AND REHEARING EN BANC

Before HIGGINBOTHAM, DENNIS, and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Treating the respondent-appellee's petition for rehearing en banc as a petition for panel rehearing, the petition is granted. We withdraw our prior opinion[1] and substitute the following. We deny the petitioner-appellant's petition for panel rehearing.

Quintin Phillippe Jones was sentenced to death by a Texas court. He now appeals the district court's denial of his federal application for post-conviction

---

[1] *Jones v. Davis*, 922 F.3d 271 (5th Cir. 2019).

## No. 16-70003

relief, arguing that evidence was erroneously admitted at sentencing in violation of his Fifth Amendment rights and that the district court improperly denied him further investigative funding. We granted a certificate of appealability, and now affirm the district court's judgment and denial of funding.

## I

Jones beat his eighty-three-year-old great aunt, Berthena Bryant, to death with a baseball bat after she refused to continue lending him money.[2] Fort Worth police arrested him the next day for outstanding traffic warrants and possession of a controlled substance. They interviewed him twice about Bryant's murder.[3] The first time, Jones denied involvement. The second time, he waived his *Miranda* rights and confessed to the murder—explaining that he had an alter ego named James who lived in his head and who was responsible for killing Bryant.[4]

Based on a lead from Jones's sister, the police also investigated Jones's involvement in the murders of Marc Sanders and Clark Peoples.[5] Nine days after Jones confessed to killing Bryant, a Texas Ranger and sheriff's deputy interrogated Jones about the Sanders and Peoples murders.[6] Jones told them that he murdered Sanders and Peoples with his close friend Ricky "Red" Roosa. He described how Roosa was the primary decision-maker and directed Jones to take steps like restraining the victims and disposing of their bodies.[7] Authorities only informed Jones of his *Miranda* rights after this statement was

---

[2] *Jones v. State*, 119 S.W.3d 766, 770–71 (Tex. Crim. App. 2003).

[3] *Id.* at 771.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at 781, 792–94.

2

written down and he was about to sign; he proceeded to sign it.[8] While Jones was only tried for Bryant's murder and this written statement was not introduced at the guilt phase of his trial, it was introduced in the punishment phase.

A Texas jury convicted Jones of capital murder. At the punishment phase of his trial, the jury was asked to answer Texas's two special issues: "1) would appellant probably commit future criminal acts of violence that would constitute a continuing threat to society; and 2) whether, taking into consideration all of the evidence, there are sufficient mitigating circumstances to warrant a life sentence rather than a death sentence."[9]  Based on the jury's findings that Jones was likely to commit future acts of violence and that there were insufficient mitigating circumstances to warrant a life sentence, the trial court sentenced Jones to death.[10] The Texas Court of Criminal Appeals, or CCA, affirmed his conviction and sentence,[11] and the United States Supreme Court denied certiorari.[12] After allowing Jones multiple extensions of time to file his state habeas petition, the CCA denied Jones's application in 2005.[13]

Despite Jones's persistent efforts to have substitute or additional counsel appointed for his federal postconviction proceedings, the district court appointed his state habeas attorney, Jack Strickland, in an order that also directed Jones to "timely file his federal petition for writ of habeas corpus" and required "[t]he petition [to] demonstrate that it is timely filed under 28 U.S.C.

---

[8] *Id.* at 772.

[9] *Id.* at 777.

[10] *Id.* at 770.

[11] *Id.*

[12] *Jones v. Texas*, 542 U.S. 905 (2004).

[13] *Ex parte Jones*, No. WR-57,299-01, 2005 WL 2220030, at *1 (Tex. Crim. App. Sept. 14, 2005) (per curiam).

No. 16-70003

§ 2244(d)(1)." Strickland miscalculated the filing deadline and filed Jones's federal petition 149 days late.[14]

After Strickland did not contest the dismissal of the petition before the district court or on appeal,[15] the district court appointed new counsel and vacated its dismissal to give Jones a chance to respond. After an appeal and remand concerning whether Jones was entitled to equitable tolling, the district court initially found that no grounds existed for equitable tolling, then was persuaded to reverse course after Jones moved for reconsideration.

Jones filed an amended petition adding claims for relief, and sought additional funding for investigative services. The district court denied Jones's investigative funding request, then denied each of Jones's six claims for relief. It denied Jones a certificate of appealability on all claims. We granted Jones a certificate of appealability on his claim that the trial court violated his Fifth Amendment rights by admitting an unmirandized confession at the

---

[14] While Strickland thought the deadline fell one year after the state court's denial of Jones's habeas petition, the correct deadline was one year after the denial of Jones's petition for certiorari on direct appeal, with tolling for the pendency of the state habeas proceedings: April 18, 2006. *See* 28 U.S.C. § 2244(d). And, although the federal filing deadline was tolled while Jones's state habeas petition was under consideration, it was not tolled for the 149-day period between when the Supreme Court denied certiorari on direct appeal and Jones filed his state petition. Jones's federal petition was precisely 149 days late.

As the district court explained, this was not an inexplicable error. Typically, the deadline to file a post-conviction petition in Texas state court passes *before* the case is finalized on direct appeal. Where a petitioner files a state habeas application before the judgment is finalized on direct review, the one-year federal limitations period is instantly tolled when the direct appeal terminates, and only resumes when the state habeas proceedings are finalized. Here, in contrast, the deadline for Jones's state habeas petition was tolled because Jones received an extension allowing him to file the state petition *after* the Supreme Court denied certiorari on direct appeal.

[15] Strickland informed Jones that he was investigating options, but did not notice an appeal in this court or tell Jones that he was not filing an appeal.

punishment phase,[16] and instructed Jones to simultaneously brief his appeal from the district court's denial of investigative funding.[17]

We conclude that Jones is not entitled to relief on his Fifth Amendment claim, and that the district court did not abuse its discretion in denying investigative funding. As a result, we do not address the Director's argument that the district court erred in equitably tolling the limitations period for Jones's federal petition.[18]

## II

We review a district court's grant of summary judgment denying federal habeas relief de novo.[19] Under AEDPA, we evaluate claims decided on the merits by the state court for whether they were "contrary to, or involved an unreasonable application of, clearly established Federal law," or whether they "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[20] A decision is "contrary to" such clearly established federal law if it either "applies a rule that contradicts the governing law set forth" in the Supreme Court's holdings or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different

---

[16] *Jones v. Davis*, 673 F. App'x 369, 376 (5th Cir. 2016) (per curiam). The Supreme Court denied certiorari on the claim for which we declined to grant Jones a COA. *Jones v. Davis*, 137 S. Ct. 2188 (2017).

[17] A COA is not needed to appeal this issue, so when we granted Jones a COA on the *Miranda* issue, we instructed him to brief his § 3599 argument at the same time. *Jones*, 673 F. App'x at 376.

[18] *See Garcia v. Quarterman*, 454 F.3d 441, 444 n.5 (5th Cir. 2006) ("Because we deny the habeas petition, we do not address the issue of tolling . . . ."); *see also Holland v. Florida*, 560 U.S. 631, 645 (2010) (observing that AEDPA's one-year limitations period is not jurisdictional).

[19] *Whitaker v. Davis*, 853 F.3d 253, 257 (5th Cir. 2017).

[20] 28 U.S.C. § 2254(d).

No. 16-70003

from [Supreme Court] precedent."[21] A state court unreasonably applies such law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[22] In reviewing state court decisions, we bear in mind that "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [the Supreme] Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error."[23]

As we have explained, Jones was prosecuted solely for the capital murder of his aunt, but evidence was admitted at the punishment phase as to his role in the murders of Peoples and Sanders. That evidence included a written confession that Jones gave to authorities where he was only informed of his rights immediately before signing the confession. The Texas Court of Criminal Appeals held on direct appeal that the confession was taken in contravention of *Miranda v. Arizona*, but that its admission was harmless error under the Supreme Court's decision in *Chapman v. California*.[24] Jones argues that this was contrary to clearly established law because a confession to murder can never be harmless, and that at a minimum, the state court unreasonably applied the *Chapman* standard for harmless error.

## A

First, Jones argues that the Texas Court of Criminal Appeals' harmlessness determination was contrary to clearly established federal law because *Miranda* violations should not be subject to harmless-error analysis.

---

[21] *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). The governing Supreme Court precedent must have been clearly established at the time of the state court's adjudication. *See, e.g.*, *White v. Woodall*, 572 U.S. 415, 419–20 (2014).

[22] *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (quoting *Williams*, 529 U.S. at 413).

[23] *White*, 572 U.S. at 426 (emphasis omitted).

[24] *Jones*, 119 S.W.3d at 770–83.

No. 16-70003

He relies heavily on Justice White's opinion—joined by Justices Marshall, Blackmun, and Stevens—in *Arizona v. Fulminante*, which he characterizes as a plurality holding that *Miranda* violations are not subject to harmless error analysis.[25] There are several reasons why the state court's consideration of harmless error was not contrary to clearly established federal law. Most plainly, *Fulminante* addressed coerced confessions, not confessions taken in violation of *Miranda*.[26] And the *Fulminante* "plurality" Jones cites was in fact a dissent on the precise point at issue—Justice White explicitly acknowledged in the relevant section of the opinion that "five Justices have determined that harmless-error analysis applies to coerced confessions," and that portion was labeled as a dissent.[27] Other courts and treatises therefore correctly treat *Fulminante* as *holding* that the admission of a coerced confession is "trial error" subject to harmless-error analysis, as opposed to "structural error" not subject to such analysis.[28] In sum, no Supreme Court precedent holds that *Miranda* violations are not subject to harmless-error analysis, and the Court of Criminal Appeals' decision to apply harmless-error analysis did not conflict with clearly established federal law.

**B**

Second, Jones argues that the Court of Criminal Appeals unreasonably applied *Chapman* in concluding that the admission of the confession was harmless beyond a reasonable doubt.[29] We disagree, mindful of the *Chapman*

---

[25] 499 U.S. 279 (1991).

[26] *Id.* at 287–88. Jones shifts his characterization of the confession over the course of his briefing from having been taken in violation of *Miranda* to having been coerced. But he presents no argument that the confession was coerced, and no Texas court evaluated such a claim.

[27] *Fulminante*, 499 U.S. at 282, 288, 295.

[28] *See, e.g.*, 3B Fed. Prac. & Proc. Crim. § 855 (4th ed.).

[29] *Chapman* requires a court to declare an error harmless beyond a reasonable doubt to excuse it as harmless error. *Chapman v. California*, 386 U.S. 18, 24 (1967).

inquiry's fact-sensitive nature and the sizable deference we must accord a state court determination on the merits under AEDPA. The Court of Criminal Appeals concluded on direct appeal that given the other evidence introduced at the punishment stage, Jones's confession to the Sanders and Peoples murders did not impact—beyond a reasonable doubt—the jury's answer to the special issues of whether Jones was likely to commit future acts of violence and whether there were sufficient mitigating circumstances.[30] The jury was presented with extensive evidence that Jones murdered Peoples and Sanders. On cross-examination, Jones's sister testified that Jones had told her about the murders in detail that substantially mirrored what Jones included in his written confession.[31] An expert for the State also testified that when he interviewed Jones, Jones blamed his alter ego James for Bryant's death because he "wouldn't have killed his aunt if Red hadn't made him help kill Sanders and Peoples."[32] Jones's written statement confessing to the murders of Peoples and Sanders introduced some details that did not come out through other testimony at trial—most significantly, Jones's statement indicated that he and Roosa initially targeted Peoples because Roosa asked him if he knew anyone with money.[33] All told, however, the Court of Criminal Appeals determined that Jones's participation in the murders and details of the murders were "well established through other witnesses and evidence."[34] Jones did not dispute at trial or on appeal that he participated in the murders.[35]

---

[30] *Jones*, 119 S.W.3d at 777–83. Two judges dissented, writing that they "[w]ould not conclude, beyond a reasonable doubt, that the constitutional violation in admitting [Jones's] confessions to two additional murders at the punishment stage did not contribute to the jury's verdict for capital punishment," and would remand for a new trial on punishment." *Id.* at 803–04 (Womack, J., dissenting).

[31] *Id.* at 779–80 (majority opinion).

[32] *Id.* at 780.

[33] *Id.* at 782, 792.

[34] *Id.* at 780.

[35] *Id.* at 782.

No. 16-70003

The Court of Criminal Appeals also noted the extensive evidence of Jones's future dangerousness extending beyond the Sanders and Peoples murders: he brutally beat his aunt to death to steal money for drugs; had been convicted of several juvenile offenses, including for assaulting two teachers, possessing a handgun, and setting fire to another student's hair; and was a member of a gang.[36] In sum, it found that the written statement "did not carry the weight a confession might normally bear in light of the volume and weight of the other evidence . . . on the future dangerousness issue."[37] While it concluded that the prosecution's reference to the written confession in its closing argument was "somewhat troubling"—the prosecutor suggested that Jones was aware that Red was planning to kill Peoples because "it beg[an]" when Red asked Jones if he knew anyone with money—the court concluded that this reference did not play a significant role beyond "rhetorical flourish" in responding to the defense theory.[38] As a result, it found that "beyond a reasonable doubt . . . the erroneous admission of the [written] statement did not materially contribute to the jury's finding that there is a probability that [Jones] would commit criminal acts of violence that would constitute a continuing threat to society."[39]

As for the mitigation special issue, the court concluded that Jones's written confession to the Sanders and Peoples murders essentially emphasized that Jones was following Red's instructions—reinforcing "the basic defensive theory at the punishment stage that it was Red's bad influence that set appellant down the path toward his alter ego's murder of his aunt."[40] The confession "by no means belittled [Jones's] overall mitigation case"—which

---

[36] *Id.* at 780–81.
[37] *Id.* at 780.
[38] *Id.* at 782.
[39] *Id.* at 783.
[40] *Id.* at 781.

rested on evidence of Jones's dissociative mental disorder.[41] These observations led the court to hold that "had the [written] statement not been erroneously admitted into evidence, there is no reasonable likelihood that the jury might have returned an affirmative answer to the mitigation special issue."[42]

The CCA's decision on direct appeal, approved of in Jones's post-conviction proceedings, did not unreasonably apply *Chapman*. The court recognized and accounted for the significant impact that a defendant's confession has on a jury, and concluded that given the particularities of this trial record, it was confident beyond a reasonable doubt that the admission of the written confession did not affect the jury's answers to the special issues. Crucially, Jones never contested that he committed the murders described in the confession, and the information he provided in the confession was largely presented to the jury through other admissible avenues. Under our deferential review of the state court determination, we cannot disturb its conclusion.[43]

## III

We turn to Jones's argument that the district court improperly denied him investigative funding under 18 U.S.C. § 3599(f). Section 3599(f) allows a court to authorize funding for "investigative, expert, or other services" that are "reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence." We review a district

---

[41] *Id.* at 782.

[42] *Id.* at 783.

[43] To the extent that Jones argues that the confession in violation of *Miranda* led him to make other confessions to people who later testified at his trial, and that those confessions were "fruit of the poisonous tree," this misapprehends the sweep of the evidence against him, as well as the Supreme Court's statements on the matter. *See United States v. Patane*, 542 U.S. 630, 639 (2004) (explaining that "the *Miranda* rule 'does not require that the [otherwise voluntary] statements [taken without complying with the rule] and their fruits be discarded as inherently tainted'" (quoting *Oregon v. Elstad*, 470 U.S. 298, 307 (1985)).

court's denial of funding under this section for abuse of discretion.[44] The district court did not abuse its discretion here.

In *Ayestas v. Davis*, the Supreme Court rejected our prior "substantial need" standard for reviewing challenges to denials of § 3599 funding. It held that the "substantial need" requirement was more demanding than the statute's requirement that the services sought be "reasonably necessary" to a defendant's post-conviction challenge.[45] It also made clear, however, that "[a] natural consideration informing the exercise of [the district court's] discretion is the likelihood that the contemplated services will help the applicant win relief."[46] Therefore, "[p]roper application of the 'reasonably necessary' standard thus requires courts to consider the potential merits of the claims that the applicant wants to pursue, the likelihood that the services will generate useful and admissible evidence, and the prospect that the applicant will be able to clear any procedural hurdles standing in the way."[47]

Jones sought investigative funding to develop a potential claim under *Wiggins v. Smith*[48] that his trial counsel was ineffective for failing to sufficiently investigate and present mitigation evidence about Jones's social history, including his mental health, abusive childhood, and history of substance addiction.[49] The district court, writing before the Supreme Court decided *Ayestas*, offered several reasons for denying Jones § 3599 funding. It

---

[44] *See Ayestas v. Davis*, 138 S. Ct. 1080, 1094 (2018).

[45] *Id.* at 1092–93.

[46] *Id.* at 1094 ("After all, the proposed services must be '*reasonably* necessary' for the applicant's representation, and it would not be reasonable—in fact, it would be quite unreasonable—to think that services are necessary to the applicant's representation if, realistically speaking, they stand little hope of helping him win relief.").

[47] *Id.*

[48] 539 U.S. 510 (2003).

[49] The funding would also partially contribute to investigating Jones's state habeas counsel's ineffectiveness, which would help combat the procedural default of his ineffective-assistance-of-trial-counsel claim.

observed that "there is no question that [Jones's new federal habeas] counsel previously investigated, prepared, and was compensated for an amended petition containing substantially the same issues for which she now seeks funding." And it found that Jones had not demonstrated "reasonable necessity" for a 400-hour investigation costing $30,000, because Jones had failed to demonstrate sufficient likelihood that his trial defense team inadequately investigated the claims. Most clearly, Jones failed to address the testimony provided by the defense's mental health experts at trial—one of whom had interviewed Jones's family members and looked at relevant school, hospital, and police records, and the other of whom submitted a report addressing Jones's history of drug and alcohol abuse and other factors in his history contributing to emotional disturbance.[50] Even though Jones identified "red flags" involving alcohol and substance addiction and childhood physical and sexual abuse, the district court concluded that he had not shown that he was likely to uncover anything beyond what his experts had already addressed: "[t]he funding statute is not designed to provide petitioner with unlimited resources to investigate speculative claims."[51] This was especially so where Jones sought services in excess of $7,500 and therefore needed to show that excess funding was "necessary to provide fair compensation for services of an unusual character or duration,"[52] but wholly failed to address this requirement.

---

[50] Jones argued that his trial investigator spent inadequate time investigating potential mitigation evidence and witnesses. He did not address the fact that his experts evidently reviewed and cited evidence on the precise issues he sought funding to investigate, or offer insight into why he viewed that investigation as deficient.

[51] While the district court acknowledged that a petitioner may be entitled to funding to investigate unexhausted claims of trial counsel ineffectiveness—on the premise that state habeas counsel was also ineffective—the court concluded that Jones had not demonstrated that he was likely to uncover further evidence.

[52] 18 U.S.C. § 3599(g)(2).

No. 16-70003

Although the district court denied funding before the Supreme Court's decision in *Ayestas*, the denial did not hinge on our now-rejected requirement that Jones show "substantial need" for the funding. Instead, it viewed Jones's request for additional funding as effectively seeking a full retrial of the issues already litigated in the state court. *Ayestas* did not disturb the long-settled principle that district courts have discretion to separate "fishing expedition[s]" from requests for funding to support plausible defenses.[53] Because "the reasons the district court gave for its ruling remain sound after *Ayestas*,"[54] we conclude that remand is unnecessary and affirm the denial of funding.

## IV

We affirm the judgment of the district court.

---

[53] *See Ayestas*, 138 S. Ct. at 1094–95.

[54] *Mamou v. Davis*, 742 F. App'x 820, 824 (5th Cir. 2018) (affirming denial of funding without remand where the district court found that the petitioner had failed to provide "sufficient detail" about the bases of his underlying ineffective assistance of counsel claim); *see Ochoa v. Davis*, 750 F. App'x 365, 372–73 (5th Cir. 2018) (per curiam) (affirming denial of funding without remand where the petitioner "ha[d] not explained how further investigation would yield evidence that is different from what was available at the time of his trial" and was instead "simply seeking to 'turn over every stone'").