# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-20127

United States Court of Appeals
Fifth Circuit

**FILED**

January 7, 2020

Lyle W. Cayce
Clerk

PEDRO ERNESTO UMANA,

Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-01421

Before DAVIS, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:

The court having been polled at the request of one of the members of the court and a majority of the judges who are in regular active service and not disqualified not having voted in favor (FED. R. APP. P. and 5TH CIR. R. 35), rehearing en banc is DENIED.

In the poll, 6 judges voted in favor of rehearing en banc, and 10 voted against. Chief Judge Owen and Judges Jones, Smith, Willett, Ho, and Oldham voted in favor. Judges Stewart, Dennis, Elrod, Southwick, Haynes, Graves, Higginson, Costa, Duncan, and Engelhardt voted against.

ENTERED FOR THE COURT:


/s/ James E. Graves, Jr.

_____

James E. Graves, Jr.
United States Circuit Judge

JERRY E. SMITH, Circuit Judge, dissenting from the denial of rehearing en banc:

Until now, this court has never granted equitable tolling where a prisoner waited as long as Umana did to file his state habeas corpus petition. This remarkable result turns the concept of equitable tolling on its head. District Judge Keith Ellison did everything he was supposed to do in conscientiously dismissing on limitations, yet the panel accuses him of abuse. And in denying rehearing en banc, the active judges, by a strong 10−6 margin, show little concern.

Although it invokes *Hardy v. Quarterman*, 577 F.3d 596 (5th Cir. 2009) (per curiam), the panel never mentions *Hardy*'s salient admonition that equitable tolling is to be granted "only in rare and exceptional circumstances." *Id.* at 598 (quotation marks removed). The panel likewise conveniently avoids *Hardy*'s requirement that "a petitioner must show that he pursued the habeas corpus relief process with diligence and alacrity both before and after receiving notification." *Id.* (cleaned up) I respectfully dissent.

## I. The Executive Summary

It is more difficult to muster enough votes to rehear a case en banc where, as here, the opinion is unpublished and the state, for whatever reason, moves neither for panel nor en banc rehearing.[1] This matter is still enbancworthy because of the confusing signal the panel sends to the district judges. Even if, *arguendo*, the members of the panel would have decided differently

---

[1] In other words, *sua sponte* polls are uniformly less successful. The judges are understandably not as likely to grant rehearing in an otherwise meritorious case if the losing party isn't concerned enough to file for rehearing. The state's silence here is astonishing in light of the fact that, as stated above, equitable tolling has never been conferred on a prisoner who waited so long.

from Judge Ellison had they been in his shoes, it is way over the top and beyond reasonable imagination to say that Judge Ellison abused the wide discretion that we are supposed to accord our district judges on this matter of purely equitable discretion.

In his comprehensive six-page Memorandum Opinion and Order entered almost two years ago, Judge Ellison addressed this case with care and deliberation. He noted that "[t]he federal limitation period may be tolled equitably, but only when the petitioner shows that he has been pursuing his rights diligently, and that some extraordinary circumstance stood in his way and prevented timely filing" (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). He enunciated the proper test in explaining that "a petitioner must show that he pursued the habeas corpus process with diligence and alacrity both before and after receiving an untimely notification" (citing *Hardy*, 577 F.3d at 598).

In examining the 425-day delay in Umana's filing after discretionary review was refused, Judge Ellison meticulously reviewed every one of Umana's excuses, such as the fact that he is *pro se* and unfamiliar with the law and that there were intermittent lockdowns and staff shortages. In response, Judge Ellison judiciously reasoned that Umana's conclusional excuses didn't come close to explaining why it took 425 days and that Umana's *pro se* status, without more, couldn't take him off the hook from his lack of diligence (citing *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *Turner v. Johnson*, 177 F.3d 390, 391–92 (5th Cir. 1999) (per curiam)).

These are precisely the sort of evaluations we entrust to district judges, especially those with Judge Ellison's more than twenty years' experience. The panel even admits that "equitable tolling does not lend itself to bright-line rules" and that "we must consider equitable tolling on a case-by-case basis." Yet this panel tars Judge Ellison with abuse of discretion for making an

equitable judgment based on these particular facts and in full accord with controlling law.

The panel opinion is long on vitriol aimed at what it calls "the government"[2] but short on reference to established, published, binding Fifth Circuit precedent. Even on the basis of the law in place when this matter was briefed,[3] the panel was wrong. More disturbing, however, is its refusal, even now, to budge in light of *Jackson v. Davis*, 933 F.3d 408 (5th Cir. Aug. 2, 2019) (Smith, J.), of which the panel was presumably unaware when it issued its opinion on October 11, 2019.[4] The panel declines to alter its opinion to recognize that *Jackson* even exists.

## II. Into the Weeds: The Law and the Facts

The foregoing summary easily shows that the panel's ruling is suspect. But if the reader needs more details, and at the risk of some repetition, I provide them now.

The ground rules for equitable tolling in habeas cases are familiar. It's a remedy of last resort, and to deserve it, the petitioner must show (among other things) that he pursued his rights with determination and persistence. "'The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.'" *Id.* at 411 (quoting *Holland*, 560 U.S. at 653). But the late filing must result from something beyond the petitioner's

---

[2] In its five-page opinion, the panel refers to "the government" seven times. It is as though these seasoned judges were unaware of the fact that in habeas proceedings and otherwise, this court refers to the state defendants as, *e.g.*, "the state," "the Director," or "Davis" and not as "the government," a term uniformly reserved for the United States or its agencies or employees. The reader can only speculate as to why the panel didn't fix this obvious flaw, among others.

[3] The last brief was filed January 17, 2019.

[4] Neither party called the panel's attention to the new case, nor, presumably, did the judges or their diligent law clerks independently discover it.

control. *Id.* at 410.

The panel tosses those principles to the wind. Umana slept on his rights for eleven out of twelve months of the AEDPA limitations period, then sought tolling when things went awry. Yet, without a single case in support, the panel awards him equitable tolling—a remedy that we reserved, until today, for "rare and exceptional circumstances." *Hardy*, 577 F.3d at 598.[5]

### A.

The facts are easy to digest, but the result is tough to swallow. Umana's state conviction became final on June 2, 2015. That gave him one year (until June 2, 2016) to file a § 2254 habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A). With the clock ticking, Umana nonetheless waited eleven months to file a state habeas application, which tolled federal limitations. *Id.* § 2244(d)(2). The Texas Court of Criminal Appeals ("TCCA") denied the application on August 10, 2016, which restarted the clock. But Umana didn't receive notice of the denial until April 26, 2017. He filed a federal habeas petition eight days after receiving the notice, but, by that time, the window to file had long passed.

Absent equitable tolling, then, Umana's petition was untimely. Judge Ellison granted the state a summary-judgment dismissal, holding that Umana wasn't entitled to equitable tolling. He hadn't diligently pursued his rights, the court reasonably concluded, because he waited until only one month remained on the federal clock before filing for state habeas.

The panel reverses, holding that equitable tolling was required for the

---

[5] It's fair to acknowledge that in *Jackson*, we found abuse of discretion. The difference is that there the refusal to grant equitable tolling ran directly afoul of "the ample precedent from this court and other courts of appeals indicating that Jackson acted diligently . . . ." *Jackson*, 933 F.3d at 411. Umana, on the other hand, offers no precedent in his favor, because there is none.

period between TCCA's denial and the notice of that denial. Without even mentioning, much less distinguishing, them, the panel states that the authorities the state relied on are "easily distinguishable."[6] The panel then claims that *Hardy*, 577 F.3d at 599, controls, even though the petitioner in *Hardy* had filed for state habeas just two months into the federal limitations period, *id.* at 597. And in a sweeping conclusion, the panel holds that equitable tolling is warranted because, "if not for the failure of the TCCA to inform [Umana] of its denial of his state petition, there would have been more than sufficient time to file his federal petition . . . ." Thus, even though Umana tarried on his rights for eleven out of twelve months, the panel announces that Judge Ellison somehow *abused his discretion* in refusing equitable tolling.

## B.

### 1.

It is the panel—not Judge Ellison—that errs. "[A] component of the obligation to pursue rights diligently is not to wait until near a deadline to make a filing, then seek equitable tolling when something goes awry." *Schmitt v. Zeller*, 354 F. App'x 950, 951 (5th Cir. 2009) (per curiam). Equitable tolling is thus allowed only where the petitioner shows that (1) an "extraordinary circumstance stood in his way and prevented timely filing," and, most relevantly here, (2) "he has been pursuing his rights diligently." *Jackson*, 933 F.3d at 410. Sometimes a petitioner seeks tolling for the period between the denial of a state

---

[6] This is all the panel says:

> The government asserts that, as the district court found, the sole fact that Umana filed his state habeas petition with one month remaining on his AEDPA limitations period establishes a lack of diligence. However, the authorities cited by the government are easily distinguishable and do not support that proposition.

We owed the parties and the district judges in this circuit much more of an explanation.

habeas petition and the notice of that denial. Where so, we examine his level of diligence, if any, at *three* distinct stages.[7]

First, and crucially here, we ask how long the petitioner delayed in filing for state habeas. *See id.* In granting equitable tolling in *Jackson*, *id.* at 411–12, and *Hardy*, 577 F.3d at 597, we praised the petitioners for waiting only 1½ and 2 months, respectively, to file for state habeas; but in denying tolling in *Stroman v. Thaler*, 603 F.3d 299, 302–03 (5th Cir. 2010) (per curiam), we scolded the petitioner for waiting 7 months.

Second, we examine the petitioner's efforts to check the status of his pending state application. *See Jackson*, 933 F.3d at 413. In *Jackson*, *id.*, and *Hardy*, 577 F.3d at 599, we credited the petitioners for requesting a status update 15 and 11 months, respectively, after filing; in *Stroman*, 603 F.3d at 302, however, we criticized the petitioner for not checking in for 18 months.

Third, we look to how promptly the prisoner filed his federal petition after learning that his state petition had been denied. *See Jackson*, 933 F.3d at 413. In *Jackson*, *id.* at 412, and *Hardy*, 577 F.3d at 598, we found that petitioners who took only 17 and 7 days, respectively, were diligent; not so much, however, for the prisoner in *Stroman*, 603 F.3d at 301, who took 48 days.

2.

Umana was diligent at the second and third stages, *i.e.*, in checking on his pending application and in quickly filing for federal relief after learning of the state court's denial. But the panel effectively eliminates any requirement that the prisoner be diligent at the first stage, because it ignores Umana's pro-

---

[7] *See, e.g.*, *Jackson*, 933 F.3d at 413 (requiring petitioner to show that he had been "diligent [1] before the delay in receiving notice, [2] during the pendency of his state application, and [3] in promptly filing his federal habeas petition after receiving notice").

found delay in seeking state habeas. That stage is crucial,[8] and it should have controlled.

If a prisoner files a state application early in the twelve-month federal limitations period, he hedges his bet, because he leaves plenty of time to petition for federal relief if the state application is denied. That is what "reasonable diligence" looks like. But if he waits, as Umana did, until the clock has nearly expired, he leaves precious little time to account for unexpected circumstances, such as the state court's failure to notify him. "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006) (per curiam).

Umana put himself into this predicament. He dawdled for way too long before filing for state habeas. If he had been as diligent as the *Hardy* prisoner (2 months) or the *Jackson* prisoner (1½ months) in seeking state relief, then he would have met the federal deadline even *with* an 8-month delay in notice. Around 2 months would have remained. Indeed, if Umana had "advanced his claims within a reasonable time of their availability, he would not now be facing any time problem." *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005). Bizarrely, the panel insists otherwise, asserting that "any delay in filing [Umana's] state petition was not causally related to his untimely federal petition."

That's absolutely incorrect as a matter of law. As stated, if Umana had

---

[8] *See id.* at 411 ("What a petitioner did *both before and after* the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall." (emphasis added)); *Hardy*, 577 F.3d at 598 ("[A] petitioner *must* show that he pursued the habeas corpus relief process with diligence and alacrity *both before and after* receiving notification." (cleaned up) (emphasis added)).

filed earlier, as others have, he would've met the federal deadline.[9] As the state correctly observed, we had "never granted . . . equitable tolling . . . where a petitioner waited as long as Umana to file his state habeas application." This case should not be the first.

### 3.

What the panel misapplies, it also misunderstands. It holds that Umana deserves equitable tolling because, "if not for the failure of the TCCA to inform him of its denial of his state petition, there would have been more than sufficient time to file his federal petition." Fairly read, that language seems to endorse a kind of "but-for" test for equitable tolling. That is, if the prisoner would have had enough time to file his federal petition but for the state's delay, then he is automatically entitled to equitable tolling to account for the delay.

That can't be the rule. *Any* time a prisoner seeks equitable tolling of AEDPA limitations, it will necessarily be true that, absent the "extraordinary circumstance," he would have timely filed his federal petition. Otherwise, equitable tolling would do him no good. As explained above, the correct test looks to three distinct stages: (1) how long it took the prisoner to file for state habeas, (2) how frequently he checks the status of his state application, and (3) how quickly he files for federal habeas after receiving notice of the state denial. The panel's contrary rule turns an extraordinary remedy into a standard one.

---

[9] Maybe an eleven-month delay in seeking state habeas could be forgiven if the prisoner proved some unusual circumstance. But Umana merely asserted that he was *pro se* and that the prison law library was supposedly closed an "inordinate" number of days, offering no proof. As Judge Ellison court properly recognized, those were conclusional allegations, and Umana failed to show why he couldn't file for eleven months.

\* \* \* \* \*

The full court should have been willing to give this case a second look. For the reasons described, the panel opinion conflicts with our well-worn approach to evaluating requests for equitable tolling following delayed notice of a state's rejection of a habeas petition. And we frequently confront petitioners such as Umana, who seek equitable tolling of AEDPA limitations, so maintaining uniformity is particularly important.[10]

A prisoner's diligence on the back end doesn't excuse his procrastination on the front. Nor should it. "Equity is not intended for those who sleep on their rights,"[11] and Umana dozed for eleven months. Nothing in our caselaw rescued him from his slumber.

What is the hapless district judge to do when faced with this misleading opinion? The panel does not say. So I respectfully dissent.

---

[10] In 2019 alone, there were at least five Fifth Circuit cases, in addition to this one, in which habeas petitioners sought equitable tolling of the AEDPA limitations period. *See Johnson v. Davis* (*In re Johnson*), 935 F.3d 284, 295–96 (5th Cir.), *petition for cert. filed* (U.S. Dec. 13, 2019) (No. 19-6934); *Jackson*, 933 F.3d at 408; *Jones v. Davis*, 922 F.3d 271 (5th Cir.), *opinion withdrawn and superseded on reh'g*, 927 F.3d 365 (5th Cir. 2019), *petition for cert. filed* (U.S. Oct. 31, 2019) (No. 19-6465); *Davis v. Vannoy*, 762 F. App'x 208, 209 (5th Cir. 2019) (per curiam); *Figueredo-Quintero v. McCain*, 766 F. App'x 93, 98 (5th Cir. 2019) (per curiam).

[11] *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) (cleaned up).